UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFREY ROY CROSBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:24-cv-00060-JPH-MG |
| ) | |
| J. KALLIS Complex Warden, ) | |
| OFFICER JANE DOE A-2 Unit, ) | |
| SAJNAJ Officer, ) | |
| TURNER Unit Manager, ) | |
| COX P.A., ) | |
| ) | |
| Defendants. ) | |

**ORDER DISMISSING COMPLAINT AND DIRECTING FILING OF AMENDED COMPLAINT**

Plaintiff Jeffrey Crosby is a prisoner currently incarcerated at Terre Haute Federal Correctional Institution. He filed this civil action alleging various deprivations of his constitutional rights. Because the plaintiff is a "prisoner," this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to

1

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

The complaint names as defendants: (1) FCI Terre Haute Warden J. Kallis; (2) Physician's Assistant Cox; (3) Officer Jane Doe; (4) Officer SajNaj; and (5) F-1 Unit Manager Turner.[1]

### A. Failure-to-Protect and Medical-Care Claims

Mr. Crosby alleges that he is 72 years old and in poor health. In 2015, after being stabbed at another prison, Mr. Crosby was transferred to FCI Terre Haute to be put into protective custody. On January 16, 2023, Mr. Crosby was brutally assaulted by a new cellmate who was known to be a violent gang member who previously assaulted several other cellmates. X-rays and a

---

[1] Mr. Crosby attached exhibits to his complaint. While the Court may consider documents attached to a complaint, it is a plaintiff's burden to plead a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). These exhibits appear to be evidence in support of the claims alleged in complaint. To consider the exhibits at this point would circumvent the "short and plain statement requirement" of Rule 8(a)(2) and impose an unjustified burden on the Court. The Court will not sift through these documents and try to discern their potential relevance at the pleading stage. *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) (stating that attachments to a complaint may be stricken).

2

subsequent CT scan revealed that Mr. Crosby's skull was broken in several places, and that his cheek plate had separated. Mr. Crosby was told he would be seen by an outside specialist for treatment, but as of the filing of the complaint on February 20, 2024, that had not yet happened. Mr. Crosby also asserts that he sustained broken ribs and a broken finger in the attack and continues to suffer extreme pain from it. Mr. Crosby's complaint does not clearly indicate which named defendant(s) he wants to sue for these claims. Liberally construed, however, Mr. Crosby may be alleging that P.A. Cox delayed obtaining an x-ray for his finger for a few weeks, as described further below.

### B. Claims Against P.A. Cox and Resulting Discipline

On January 24, 2023, Mr. Crosby saw P.A. Cox, who told him that his skull was broken in more than one place. Mr. Crosby told P.A. Cox that his ribs and left index finger were also broken. P.A. Cox told him to "watch the callout" for an x-ray and "to immediately come to medical and see him" if Mr. Crosby "had any problems whatsoever." Dkt. 1, p. 5.

The next morning, while at the morning "pill line," Mr. Crosby went into medical and requested an x-ray of his finger. P.A. Cox said "What, are you getting beat up every day?" *Id.* Mr. Crosby did not like P.A. Cox saying this in front of other inmates and told him to "shut up." *Id.* Rather than arranging from Mr. Crosby to have his finger x-rayed at that time, P.A. Cox instead took him to a Lieutenant's office. Mr. Crosby was disciplined for being "insolent to staff," and Warden Kallis did not respond to Mr. Crosby's request for the incident report to be expunged. *Id.* Mr. Crosby was placed in segregation for 90 days and received

3

90 days of commissary and phone restrictions because of this incident report. Mr. Crosby's finger ultimately was x-rayed about 2-3 weeks after he was placed into segregation.

### C. Claims Regarding Theft of Property

For several months in 2023, Mr. Crosby was subjected to repeated thefts of his property by other inmates and prison officials. Officer SajNaj did nothing to investigate or try to stop those thefts. Mr. Crosby also suspects an unknown officer assisted in at least one of the thefts. Mr. Crosby complained to Unit Manager Turner about Officer SajNaj, to no effect. Mr. Crosby further states that Officer SajNaj told two other inmates that Mr. Crosby had accused them of stealing from him. Mr. Crosby suggests Officer "Jane Doe" was somehow involved in the thefts as well, by fabricating death threats against Mr. Crosby and causing him to be removed from his cell, during which time other inmates stole things from his cell. Mr. Crosby filed a Federal Tort Claim Act administrative claim about the thefts, which was denied. In July 2023, Mr. Crosby was placed in a different unit at FCI Terre Haute and has not been the subject of any more thefts or assaults since then.

### D. Prayer for Relief

Mr. Crosby is seeking compensatory and punitive damages against all defendants. He specifies that he is seeking damages "for deliberate indifference from the Institution regarding medical attention, or lack thereof." *Id.* at p. 9. He also seeks recovery for "any other losses shown the record of prior Tort Claims brought since my transfer to U.S.P. Terre Haute . . . ." *Id.*

4

### III. Dismissal of Complaint

Applying the screening standard to the facts alleged in the complaint, the complaint must be dismissed for failure to state a claim upon which relief may be granted. First, a plaintiff incarcerated at a federal prison, alleging harm caused by a prison employee's state-law tort or torts, may be entitled to file a lawsuit under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"). However, the only proper defendant in an action pursuant to the FTCA is the United States itself, *Hughes v. United States,* 701 F.2d 56, 58 (7th Cir. 1982). Mr. Crosby did not name the United States as a defendant, and the complaint indicates only that he wishes to sue individual actors in their personal capacities for damages. *Myles v. United States,* 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the amended complaint are entirely the responsibility of the plaintiff, for "even pro se litigants are masters of their own complaints and may choose who to sue-or not to sue"). Therefore, there is no proper FTCA claim in this case as the complaint currently stands. Any claims against the individual defendants are governed by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Second, regarding the failure-to-protect and medical care claims, Mr. Crosby's complaint does not indicate any personal involvement by any of the named defendants with respect to those claims, except possibly with respect to a delay in obtaining an x-ray for Mr. Crosby's finger that might be attributable to P.A. Cox. To state a claim under *Bivens,* a plaintiff must allege that the individual defendant was personally involved in the alleged deprivation of the

5

plaintiff's constitutional rights *See, e.g., Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) (to be subject to *Bivens* liability, a defendant must have had "direct, personal participation" in the constitutional violation). To the extent that Mr. Crosby intended to name Warden Kallis as a defendant for these claims, the Supreme Court eliminated supervisory liability for *Bivens* claims in *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Mr. Crosby has not done so here with respect to the medical treatment he has or has not received, except possibly for his broken finger. Additionally, with respect to any failure-to-protect claim, the Seventh Circuit has directly held that such a claim is not actionable under *Bivens*. *Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023) ("The question before us is whether a federal prisoner can bring a *Bivens* action alleging that a prison official failed to protect him from violent attacks by his cellmates. After the Supreme Court's recent decisions in this area, the answer is no.").

Based on the allegations about Mr. Crosby's medical-care claim about alleged delay of Mr. Crosby's x-ray against P.A. Cox, this claim fails as a matter of law. In *Bivens*,

> the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim. The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, 442 U.S.

6

> 228, 99 S. Ct. 2264 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, (1980), a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment. After those decisions, however, the Court changed course.

*Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). Expansion of *Bivens* is a disfavored judicial activity and the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 743; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) ("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate").

When asked to extend *Bivens*, the Court engages in a two-step inquiry. First, it asks whether the request involves a claim that arises in a new context or a new category of defendants. *Hernandez,* 140 S. Ct. at 743; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). A context is "new" if it is "different in a meaningful way from previous *Bivens* cases decided by this Court." *Hernandez,* 140 S. Ct. at 743; *Abbasi,* 137 S. Ct. at 1859.

Second, if the claim presents a new *Bivens* context, the Court then asks whether there are any special factors that counsel hesitation about granting the extension. *Egbert v. Boule*, 596 U.S. 482, 499 (2022). In applying the second factor, a district court "faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1805 (cleaned up). Additionally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial

structure.'" *Id.* at 496 (quoting *Abbasi*, 137 S. Ct. at 1858). And this is true even if the individual plaintiff alleges he does not have access to the alternative remedy. *Id.* at 498 ("[W]hether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.").

The closest possible analogy to Mr. Crosby's claim is *Carlson*. But that case involved prison officials' failure to adequately respond for hours to a critical medical emergency and ignoring medical advice, which led to the death of the inmate. *See Carlson*, 446 U.S. at 16 n.1. Here, the Court understands Mr. Crosby's medical-care claim against P.A. Cox to be limited to claiming a delay of a few weeks in getting an x-ray for a broken finger. Dkt. 1 at 5. The Court cannot conclude, especially after *Egbert*, that this is sufficiently parallel to *Carlson* to automatically allow for a *Bivens* remedy. *See Washington v. Fed. Bureau of Prisons*, No. 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) (holding that prisoner's claim that officials failed to adequately treat his blindness, which allegedly accelerated vision loss and caused persistent pain, was a new *Bivens* context distinguishable from *Carlson* because it concerned "a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition"); *Prucha v. Watson*, 672 F. Supp. 3d 642, 650 (S.D. Ind. 2023) (holding that alleged failure to accommodate hearing disability was a new *Bivens* context).

Because Mr. Crosby's claim presents a new *Bivens* context, the Court proceeds to the special factors analysis, which in light of *Ziglar* and *Egbert* is brief. The Bureau of Prison's administrative remedy process, 28 C.F.R. § 542.10

8

*et seq.*, provides inmates with the ability to seek formal review of any complaint related to the conditions of their confinement. Additionally, in *Ziglar*, the Supreme Court recognized the availability of injunctive relief to address conditions-of-confinement claims such as Mr. Crosby's. 582 U.S. at 144. But Mr. Crosby is not seeking injunctive relief, only damages. The Court reiterates that the Federal Tort Claims Act does allow recovery of damages against the United States under certain circumstances where federal agents, including prison officials, commit a state-law tort against an inmate. In other words, consistent with *Ziglar* and *Egbert*, the Court concludes that Congress has established alternative remedial structures for claims such as Mr. Crosby's, such that expansion of a *Bivens* remedy in this context would be inappropriate.

Third, it appears that Mr. Crosby alleges P.A. Cox retaliated against him by initiating a disciplinary action for telling P.A. Cox to "shut up." The Supreme Court recently held "that there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 at 499.[2] To the extent Mr. Crosby may also be attempting to make a claim regarding his placement in segregation against Warden Kallis, both the Seventh Circuit and this Court have held that claims for damages in relation to alleged due process violations in disciplinary proceedings and placements in segregation are not actionable under *Bivens*. *See Fiorito v. Segal*, 2022 WL 4809726 at * 3 (7th Cir. Oct. 3, 2022); *Harris v. Dunbar*, 2018 WL 3574736 at * 4 (S.D. Ind. July 25, 2018).

---

[2] Additionally, it is well-settled that inmates do not have a First Amendment right to be "insolent" to staff. *Hale v. Scott*, 371 F.3d 917, 919 (7th Cir. 2004).

Fourth, Mr. Crosby accuses Unit Manager Turner, Officer SajNaj, and Officer "Jane Doe" of conspiring to steal, or help other inmates steal, his property. Assuming that Mr. Crosby has sufficiently stated factual allegations to support such claims, they would not be actionable under *Bivens*.

A claim related to theft or other deprivation of Mr. Crosby's property would present a new *Bivens* context. Expansion of a *Bivens* remedy in this context would be unwarranted. Mr. Crosby has other potential avenues to pursue a claim such as this, including but not limited to the FTCA. *See Marulanda v. United States Marshals Serv.*, 467 F. App'x 590, 590–91 (9th Cir. 2012) (finding the district court properly dismissed a federal prisoner's Fifth Amendment due process claim for a deputy marshal's alleged intentional deprivation of a prisoner's property because Congress provided an adequate post-deprivation remedy under 31 U.S.C. § 3724(a)); *Rodriguez v. Easter*, 2022 WL 356478, at *8 (D. Conn. Feb. 7, 2022) (noting that 31 U.S.C. § 3724 provided a remedy for inmate's lost property thereby foreclosing a due process claim); *Jelen v. United States Marshals Serv.*, 2020 WL 1503566, at *9 (S.D.N.Y. Mar. 30, 2020) (same).

Because the Court has been unable to identify a viable claim for relief against any particular defendant, the complaint is subject to dismissal.

### IV. Opportunity to File an Amended Complaint

The dismissal of the complaint will not in this instance lead to the dismissal of the action at present. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726,

10

738 (7th Cir. 2018). In the interest of justice, the court will allow plaintiff to amend his complaint if, after reviewing this court's order, he believes that he can state a viable claim for relief, consistent with the allegations he has already made. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("We've often said that before dismissing a case under 28 U.S.C. § 1915(e)(2)(B)(ii) a judge should give the litigant, especially a pro se litigant, an opportunity to amend his complaint."); *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013).

The plaintiff shall have **October 10, 2024, to file an amended complaint**.

The amended complaint must (a) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis; (b) include a demand for the relief sought; and (c) identify what injury he claims to have suffered and what persons are responsible for each such injury. In organizing his complaint, the plaintiff may benefit from utilizing the Court's complaint form. The **clerk is directed** to include a copy of the prisoner civil rights complaint form along with the plaintiff's copy of this Order.

Any amended complaint should have the proper case number, 2:24-cv-00060-JPH-MG, and the words "Amended Complaint" on the first page. The amended complaint will completely replace the original. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). Therefore, it

11

must set out every defendant, claim, and factual allegation the plaintiff wishes to pursue in this action.

If the plaintiff files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b). If no amended complaint is filed, this action will be dismissed without further notice or opportunity to show cause.

The Court further reminds Mr. Crosby that Rule 18(a) of the Federal Rules of Civil Procedure provides, "[a] party asserting a claim to relief as an original claim, . . . may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Joinder of the defendants into one action is proper only "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). If the amended complaint asserts plausible but misjoined claims, they will be severed and proceed in separate actions and Mr. Crosby will be responsible for the filing fee in each case.

Finally, the Court **grants** Mr. Crosby's motions at dkts. [11] and [12] because this Order provides Mr. Crosby with an update on the status of his case as requested in the motions. Additionally, Mr. Crosby requests copies of his

original complaint and attachments. The **clerk is directed** to attach those documents at dkt. [1] to Mr. Crosby's copy of this Order.

**SO ORDERED.**

Date: 9/12/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JEFFREY ROY CROSBY
01961-043
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808